## George W. Sharer v. Murrell Dobbins, Appellant.

*Contract—Sales—Damages—Question for jury.*

In an action to recover a balance due upon a brick drier, where the issue is whether certain pallets were iron pallets or steel pallets, as called for by the contract, and it appears that the defendant accepted and used the pallets, but alleges that he did not know that they were iron, the court commits no error in submitting to the jury the question whether the pallets furnished were iron or steel, and in further charging that plaintiff would not be entitled to the contract price for steel pallets, as steel pallets, if he furnished iron pallets, but would be entitled only to their reasonable value.

Argued Jan. 24, 1900. Appeal, No. 389, Jan. T., 1899, by defendant, from judgment of C. P. No. 4, Phila. Co., March T., 1895, No. 1107, on verdict for plaintiff. Before McCollum, Mitchell, Fell, Brown and Mestrezat, JJ. Affirmed.

Assumpsit upon a contract. Before Arnold, P. J.

The court charged as follows:

The plaintiff claims the balance due him for a certain brick drying machine. There does not appear to be any dispute as to any of the items except as to certain things called pallets, or iron shelves, upon which the bricks were put to be dried. The statement of the claim, and the plaintiff himself in his testimony admitted he was to furnish steel pallets, and he swears that the pallets that he did furnish were steel pallets, although he admitted that on another occasion he said they were not steel. He did not make them himself, but he bought them from the makers. The first lot he bought from a man named Stuart, and those pallets

being objected to by Mr. Dobbins, the defendant, the plaintiff says that a sample was obtained from Mr. Hartman and that Mr. Hartman's pallets were afterwards supplied at the request of Mr. Dobbins. I believe there is no substantial dispute upon that point, that there was a change in the manufacture from Stuart to Hartman, and that the change was made upon the inspection of certain samples. Mr. Sharer, the plaintiff, says that he gave the order to Hartman to furnish the additional pallets required according to sample, and Hartman says that he did furnish pallets according to that sample; that he thought they were steel, because, he said, the sample was steel; that is, made of material which he bought as steel, and he bought the same kind of material for the other pallets. [So there will be the question in dispute for you to settle in the beginning, whether the pallets furnished by Hartman to Sharer and by Sharer to Dobbins, the defendant, were iron or steel, and, if they were not all steel, but some were iron, whether there was any difference in the value between iron and steel, and whether Mr. Sharer, if allowed to recover anything, should recover more than for the value of iron pallets. We have no evidence here to show exactly how many of them were steel or how many were iron, or whether all were steel or all were iron. The testimony is somewhat in confusion as respects that. However, that is a matter for the jury to say, whether the pallets furnished were those which were contracted for, and if they were, then whether they were worth the amount charged for them.] [1] If they were not the pallets contracted for—if they were worthless, if they were worth nothing—then, of course, the plaintiff should recover nothing. The question is purely one of fact, and has been so fully explained to you by the witnesses, and detailed by them and argued by counsel, that there is nothing I can say upon the subject which would be anything more than an expression of opinion on the facts, and that I refrain from giving you. I want you to settle the question upon the evidence.

On behalf of Mr. Dobbins it is testified that some of these pallets were broken when they were received and were thrown away. According to Mr. Dobbins's witnesses it appears some gave out in a year, and some lasted two or three years, one of the witnesses saying they were continually throwing them out

because they rusted and they became weak and sunk under a load. It appears, however, that some of the pallets, how many we do not know, were continued in use, according to Mr. Dobbins's witnesses, two or three years, and others say for five years. Of course, if a man furnishes what he agrees to furnish according to the sample he gives, he complies with the agreement, and, unless he gives some guaranty as to the life or time the article will live and be useful, he is not held to the consequences of an early decay of the article. If, however, when they are furnished in the beginning they are not what was contracted for, and they are so inferior in quality to that which was to have been furnished that they instantly show signs of weakness, insufficiency, to such an extent that they have to be thrown away, then you are to say whether a person suing for an article of that kind is entitled to recover the whole amount of the contract price or only a portion of it or none at all. That you will settle upon the testimony.

Defendant's points and the answers thereto among others were as follows:

1. The undisputed evidence being that under the contract between the plaintiff and the defendant, the plaintiff was to furnish steel pallets for the drier, for the price of which this suit is brought, and that he furnished, not steel pallets, but iron pallets, he is not entitled to recover from the defendant in any event the contract price for such steel pallets, but only what said iron pallets were reasonably worth. *Answer:* I refuse that point in these terms. I leave it to you to say what kind of pallets were furnished, iron or steel, and what they were reasonably worth. If the contract was not carried out, of course the plaintiff is not entitled to the contract price as such, but to the reasonable value of the article furnished. [2]

3. The plaintiff undertook to furnish steel pallets. If he furnished iron pallets, without the assent of the defendant, who accepted and used them in ignorance of the fact that they were iron, and if iron pallets were materially different in their utility for the purpose for which they were used from steel pallets, the defendant is not liable for the contract price of such pallets so delivered. *Answer:* That I affirm, explaining as before, he is not entitled to the contract price for steel pallets as steel pallets if he furnished iron pallets; he would be entitled only to their reasonable value. [3]

Verdict and judgment for plaintiff for $2,399.80.   Defendant appealed.

*Errors assigned* were (1–3) above instructions, quoting them.

*John G. Johnson*, with him *James Wilson Bayard*, for appellant, cited Danville Bridge Co. v. Pomroy, 15 Pa. 151, Pepper v. Philadelphia, 114 Pa. 96, Holmes v. Oil Co., 138 Pa. 546, Monocacy Bridge Co. v. American Iron Bridge Mfg. Co., 83 Pa. 517, Moore v. Carter, 146 Pa. 492, Sticker v. Overpeck, 127 Pa. 446, and Filbert v. Philadelphia, 181 Pa. 530.

*M. Hampton Todd*, for appellee, cited Williams v. Williams, 34 Pa. 312, Filbert v. Philadelphia, 181 Pa. 530, Benson v. Maxwell, 105 Pa. 274, and Ritter v. Sieger, 105 Pa. 400.

PER CURIAM, February 26, 1900 :
The assignments of error are based on an excerpt from the charge, and on the answers to the defendant's first and third points.   The excerpt must be considered in connection with other parts of the charge relating to the claims of the parties and the evidence applicable to them.   So considered we regard the excerpt as unobjectionable.   The answers to the defendant's points are in harmony with the charge, and we cannot find in either of them any cause for reversing the judgment.   The assignments are overruled.

Judgment affirmed.